C. H. SWINK, AN INDIVIDUAL DOING BUSINESS AS SWINK CONSTRUCTION COMPANY, APPELLEE; V. MILO SMITH, APPELLANT.

113 N. W. 2d 515

Filed March 2, 1962. No. 35103.

W. C. *Conover* and *Franklin D. Carroll,* for appellant.

*Daniel E. Owens,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

Plaintiff commenced this action to recover the balance due for services rendered the defendant at his request. Defendant by answer admitted making certain payments for such services and denied generally otherwise. Defendant filed a counterclaim for damages alleged to have resulted from a breach of contract by plaintiff. At the close of all the evidence the trial court sustained a motion for judgment for plaintiff in the amount of $1,025.75 and interest, and dismissed defendant's counterclaim. Defendant has perfected his appeal to this court.

The evidence shows that the defendant is the owner of a farm in Chase County through which was a drainage ditch. The defendant desired to remove trees and debris from this ditch and have it filled and leveled. At the same time he desired to construct a new drainway to more efficiently carry drainage waters from his land into Frenchman Creek by a more direct route. He contacted the Chase County A. S. C. office and obtained an allotment of funds in the amount of $1,395.36 for the construction of the drainway to be built in accordance with plans and specifications to be prepared in accordance with the conservation practices of the A. S. C. office.

In August 1959, defendant contacted the plaintiff, a contractor engaged in the construction of such projects, with reference to the performance of the work. Plaintiff and defendant agree that plaintiff was to be paid $12 per hour for removing the trees and filling the old ditch with earth. It was further agreed that plaintiff was to be paid 13 cents per yard for removing the dirt in the construction of the new drainway. In addition to the foregoing, defendant was to pay the cost of dynamite used in the blasting of the trees. There is no dispute that plaintiff spent 10½ hours in removing trees with his bulldozer for the agreed price of $126. It is agreed also that plaintiff removed 12,480 yards of dirt from the new drainway at the agreed price of $1,622.40. It is not disputed that plaintiff used dynamite costing $30.15. It is not disputed the plaintiff performed additional work in digging a silo and filling in a ditch near the farmhouse for the agreed price of $888. The agreed price for all the work actually performed was $2,666.55. The defendant paid $1,706.31 of such amount, leaving a balance due of $960.24.

It is the contention of defendant that plaintiff agreed to perform the work within 30 days. Plaintiff testified he informed the defendant that the work could easily be done within 30 days but that he did not agree to perform it within that time. The issue before the court is whether or not an agreement to complete the work within 30 days was made and whether or not, if such an agreement was made, there was a breach thereof resulting in damage to the defendant.

The defendant did testify in the form of a conclusion that plaintiff agreed to complete the work in 30 days. No objection was made on the ground that it was a conclusion of the witness. It might be said that, standing alone, there was a question of fact for a jury. We think, however, that the evidence shows that time was not of the essence of this contract. The evidence shows that plaintiff commenced the work about the middle of Au-

gust 1959. After working a few days, plaintiff's equipment broke down and it required 2 weeks to get it repaired. Subsequently, another breakdown occurred which required 10 days to make repairs. During the course of the work covered by the agreement defendant requested plaintiff to dig a silo and to do filling work around the farmhouse. Defendant also permitted plaintiff to leave the work and perform work for others. It does appear that on December 10, 1959, the manager of the A. S. C. office advised defendant by letter that the drainway must be completed by December 21, 1959, or it would be unable to pay the authorized allotment. Defendant's wife contacted plaintiff and advised him of the contents of the letter. Plaintiff agreed to return to the work by the following Wednesday, but he failed to do so. On December 14, 1959, the manager of the A. S. C. office wrote defendant telling him it had informed plaintiff that the time for completion had been extended to December 31, 1959. On December 24, 1959, defendant employed the Wallace Construction Company to complete the work. Wallace Construction Company began the work on the afternoon of December 24, 1959. On December 28, 1959, plaintiff appeared with his equipment to finish the drainway and, finding the Wallace Construction Company doing the work, left the premises. Wallace Construction Company continued the work until December 31, 1959, when a snow storm and freezing weather caused operations to cease. No further work was done on the drainway by plaintiff or Wallace Construction Company. Defendant later purchased equipment and finished the work in September 1960.

The manager of the A. S. C. office testified that defendant was paid the full amount of his allotment when the work was completed. He testified to writing the letters to coerce the completion of the work so that it could be paid from the appropriation of funds for that year, and for no other reason. He stated that no time limit could properly be fixed as a completion date. In

any event A. S. C. was in no way involved in the contract between the plaintiff and defendant. It is made abundantly clear that defendant was in no way damaged with reference to his allotment authorized by the A. S. C. office as the full amount was paid him.

The evidence is that Wallace Construction Company was paid the same rate per yard for the removal of dirt as was the plaintiff. Defendant suffered no loss in this respect. Defendant alleges in his answer that because of the delay he was required to spend more time and fuel in his farming operations, but there is no evidence of any such damage. Although it was not pleaded, defendant testified that damage resulted to the drainway because of its uncompleted condition. In this respect it will be noted that it was the Wallace Construction Company that last left the uncompleted drainway before the alleged damage occurred, and not the plaintiff. There is no evidence of damage resulting to defendant because of the unfinished condition of the drainway.

We do not think the defendant established an agreement for a 30-day completion date by a preponderance of the evidence. In any event, if such agreement were established, the breach of the 30-day provision was waived by the subsequent actions of defendant in demanding performance as late as December 1959, and in making voluntary payments on the amount due after the 30 days had expired. We point out also that defendant failed to produce any evidence of damage to support a recovery under his counterclaim.

Defendant complains of the insufficiency of the motion for a directed verdict in that it did not specify the grounds therefor as required by section 25-1315.01, R. R. S. 1943. The motion for a directed verdict in favor of plaintiff for the amount prayed was based upon defendant's testimony as to the agreement and the construction he put on it. The motion to direct a verdict for plaintiff on defendant's counterclaim was based upon

his failure to plead or prove any damages attributable to the plaintiff. In such a situation we fail to see where defendant was prejudiced by plaintiff's failure to state the reasons why he was entitled to a directed verdict. The reasons were so apparent that their recitation could add little benefit to the court and the parties to the litigation. A judgment will not ordinarily be reversed where the complaining party would not be entitled to succeed in any event. Bohmont v. Moore, 141 Neb. 91, 2 N. W. 2d 599. In the absence of a showing of prejudice, error may not be predicated on the failure to properly set out the grounds for a directed verdict.

Where on the trial of an issue of fact the proof relating to the disputed issue is so clear and conclusive that reasonable minds cannot reach different conclusions, it is the duty of the trial court to dismiss the jury and enter judgment in accordance with the evidence. Kirshenbaum v. Massachusetts Bonding & Ins. Co., 107 Neb. 368, 186 N. W. 325; Wrona v. Schrawger, 171 Neb. 814, 108 N. W. 2d 95.

The motion by plaintiff for a directed verdict was properly sustained. The motion for a directed verdict in favor of plaintiff on defendant's counterclaim was likewise properly sustained. The record being free of prejudicial error, the judgment of the district court is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.