IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

CHRISTENSEN V. BROKEN BOW PUBLIC SCHOOLS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL T. AND CATHY D. CHRISTENSEN, INDIVIDUALLY AND AS THE PARENTS
AND NEXT FRIENDS OF CHAD M. CHRISTENSEN, AND AS THE COGUARDIANS
AND COCONSERVATORS OF CHAD M. CHRISTENSEN,
A PROTECTED PERSON, APPELLANTS,

V.

BROKEN BOW PUBLIC SCHOOLS, ALSO KNOWN AS BROKEN BOW SCHOOL DISTRICT 25,
A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, DEFENDANT AND THIRD-PARTY
PLAINTIFF, APPELLEE AND CROSS-APPELLANT, AND BEVERLY L. SHERBECK,
PERSONAL REPRESENTATIVE OF THE ESTATE OF ALBERT F. SHERBECK,
DECEASED, AND BEVERLY L. SHERBECK, INDIVIDUALLY,
THIRD-PARTY DEFENDANTS, APPELLEE.

Filed September 29, 2020.    No. A-19-125.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Reversed and remanded with directions.

David S. Houghton and Keith A. Harvat, of Houghton, Bradford, Whitted, P.C., L.L.O., and James V. Dincan and John O. Sennett, of Sennett, Duncan, Jenkins & Wickham, P.C., L.L.O., for appellants.

Matthew B. Reilly and Thomas J. Culhane, of Erickson & Sederstrom, P.C., L.L.O., for appellee Broken Bow Public Schools.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

- 1 -

## I. INTRODUCTION

Michael T. Christensen and Cathy D. Christensen's son, Chad M. Christensen, was seriously injured in an automobile accident. Chad was a passenger in a Broken Bow Public Schools (BBPS) van, which was being driven by one of his high school basketball coaches, when the van collided with a pickup truck after the truck entered the van's lane. The Christensens filed a negligence claim against BBPS. After the Christensens presented their evidence at trial, the district court granted a directed verdict in favor of BBPS, finding that the pickup truck entering the van's lane suddenly and without warning was not foreseeable and constituted an efficient intervening cause which broke the causal connection between any negligence by BBPS and the collision. The Christensens appeal, claiming, among other things, that the district court erred in directing a verdict in favor of BBPS. BBPS cross-appeals, claiming that the district court erred in granting the Christensens' motion for partial summary judgment on the issues of assumption of the risk and contributory negligence. For the reasons set forth herein, we reverse the decision of the district court to grant BBPS a directed verdict on the issue of whether there was an efficient intervening cause. We remand the cause to the district court.

## II. BACKGROUND

This action arises out of a traffic accident that occurred in Custer County, Nebraska, on June 1, 2012. The following facts are not disputed. On the day of the accident, Albert F. Sherbeck (Albert) was driving his pickup truck home and was headed eastbound on Highway 2 when he drove left of center and collided head-on with a 10-passenger van owned by BBPS, which was traveling westbound. The school van was transporting eight students from Broken Bow High School, including Chad, who were returning from a summer basketball clinic held in Kearney, Nebraska. The van was being driven by Zane Harvey, a basketball coach for Broken Bow High School. As a result of the collision, Albert, Harvey, and the front seat passenger of the school van, another basketball coach, Anthony Blum, died at the scene. Chad was seriously injured. He was not wearing his seatbelt at the time of the collision.

### 1. PLEADINGS

In March 2014, the Christensens filed an amended complaint against BBPS. In the amended complaint, the Christensens alleged five separate causes of action against BBPS. However, at trial, the Christensens focused their evidence on only two causes of action. It is these two causes of action which are at issue in this appeal. First, the Christensens alleged that BBPS was negligent in both failing to ensure that the students riding in the school van were wearing their seatbelts at the time of the collision and in the operation of the van at the time of the collision. Second, the Christensens alleged that BBPS violated the requirements set forth in Neb. Rev. Stat. § 60-6,267 (Reissue 2010), which provides that the driver of a motor vehicle must ensure that all passengers between the ages of 6 and 18 years be restrained by an occupant restraint system. The Christensens further alleged that the actions of BBPS were a proximate cause of the personal injuries sustained by Chad. They sought general damages for Chad's "[p]ermanent disability;" payment for the medical expenses which he has already incurred and which he will incur in the future; and compensation for his pain and suffering and loss of enjoyment of life.

- 2 -

BBPS filed a motion to dismiss the Christensens' amended complaint. In the motion, the school alleged that the Christensens' assertion that BBPS was negligent in failing to ensure that the students riding in the school van were wearing seatbelts did not present a claim upon which relief could be granted. BBPS based its argument on its interpretation of the language of Neb. Rev. Stat. § 60-6,273 (Reissue 2010), which provides:

> Evidence that a person was not wearing an occupant protection system at the time he or she was injured shall not be admissible in regard to the issue of liability or proximate cause but may be admissible as evidence concerning mitigation of damages, except that it shall not reduce recovery for damages by more than five percent.

BBPS interpreted this statutory section to indicate that the Christensens could not use Chad's nonuse of a seatbelt to establish liability or proximate cause against BBPS.

Moreover, as to the Christensens other cause of action, BBPS alleged that dismissal was warranted even if the court found that the school had violated the provisions of § 60-6,267, which required drivers to ensure their minor passengers were wearing a seatbelt. BBPS argued that the language of § 60-6,267 does not authorize a private cause of action based on such a violation.

The district court denied BBPS' motion to dismiss. The court found that the language of § 60-6,273 did not prohibit the Christensens from using evidence that Chad was not wearing a seatbelt at the time of the collision and, by extension, did not prohibit evidence that the drivers of the school van did not require him to wear a seatbelt. The court reasoned:

> Section 60-6,273 protects plaintiffs from evidence that they, the injured plaintiff, did not use a seatbelt at the time of the injury. In practice, it prohibits a party defendant from alleging contributory negligence against the injured plaintiff for non-use of an occupant protection system at the time of the injury. Further, it prohibits a party defendant from claiming the non-use was the proximate cause of the injuries. The statute goes further to state that such evidence may be admissible to mitigate damages. Mitigation is a trial strategy used by defendants to reduce the amount of damages after liability is found. Therefore, it is apparent the statute is referring to party defendants when it prohibits admissibility for liability and proximate cause but allows admissibility for mitigation.

As to BBPS' assertion that a violation of § 60-6,267 does not authorize a private cause of action, the district court found that while a violation of § 60-6,267 "shall not constitute prima facie evidence of negligence," the statutory language does not prohibit using evidence of a driver's failure to ensure a child is wearing a seatbelt to support a negligence claim. "In other words, [the Christensens] can present negligence claims under a common law theory supported by evidence that the students were not using seatbelts but they cannot pursue claims based on evidence that the non-use of the seatbelts was a criminal act [pursuant to § 60-6,267]."

After the district court denied its motion to dismiss, BBPS filed an answer to the Christensens' amended complaint. In the answer, the school denied that it had acted negligently and asserted numerous affirmative defenses, including that Chad assumed the risk of not wearing his seatbelt while riding in the school van. BBPS also asserted that because both Albert and Chad acted negligently at the time of the collision, that any negligence attributed to the school must be

compared with the negligence of Albert and Chad. BBPS asserted that in comparing the relative negligence of all the parties, its liability would be reduced or barred altogether.

We note that the Christensens filed a separate lawsuit against Beverly Sherbeck (Beverly), Albert's wife and the personal representative of his estate. The Christensens' claims against Beverly are the subject of a separate appeal. See *Christensen v. Sherbeck*, 28 Neb. App. 332, 943 N.W.2d 460 (2020). In addition, BBPS filed a third-party complaint against Beverly alleging that it was entitled to indemnification or contribution "for any amount it is required to pay in excess of its pro rata share" because the sole proximate cause of the collision was Albert's vehicle crossing into the school van's lane of traffic. The allegations contained in the third party complaint are not at issue in this appeal.

## 2. PRETRIAL MOTIONS

Prior to trial, BBPS filed a motion for summary judgment, which alleged that Zane Harvey and Anthony Blum were not employees of the school, acting within the scope of their employment, at the time of the collision and that, as a result, "there exists no genuine issue of material fact and BBPS is entitled to judgment as a matter of law." The district court denied the motion after a hearing, finding that BBPS had "not met [its] burden by showing there are no genuine issues as to material fact or the inferences that may be drawn from those facts. These matters are to be determined by the fact finder."

The Christensens filed a motion to strike and a motion for partial summary judgment. In the motion to strike, the Christensens asked that the district court strike two affirmative defenses raised in BBPS' answer to their amended complaint: the contributory negligence defense and the assumption of the risk defense. The Christensens alleged that evidence that Chad was not wearing his seatbelt at the time of the collision was not admissible at trial to prove that Chad was contributorily negligent or that he had assumed the risk of his injuries. Similarly, in their motion for partial summary judgment, the Christensens asked the district court to find that they were entitled to judgment as a matter of law regarding whether Chad was contributorily negligent and whether he assumed the risk of his injuries by not wearing a seatbelt at the time of the collision.

The district court granted the Christensens' request for partial summary judgment on the issues of Chad's contributory negligence and assumption of the risk. The court prohibited BBPS from raising these defenses during the trial: "Assertion of these defenses is precluded because permitting [Chad]'s fault to be raised as a bar to his recovery would defeat the fundamental purpose of [§ 60-6,267], which was enacted to protect children against their careless failure to use seat belts." The court went on to explain:

> Therefore, summary judgment is granted in favor of [the Christensens] and against [BBPS] in regards to Defendant BBPS's contributory negligence and assumption of risk defenses. Even though evidence may be available to support these defenses, the defenses are unavailable as a matter of law. As stated in the prior order, they may be used in mitigation as per Neb. Rev. Stat. § 60-6,272.

- 4 -

## 3. TRIAL

Trial in this matter was consolidated with the Christensens' case against Beverly. However, while the case against Beverly was tried to a jury, the case against BBPS was tried to the court.

During the lengthy trial, the parties presented voluminous evidence. Much of this evidence was related to the issue of why Albert's pickup truck entered the oncoming lane of traffic and struck the school van. After the Christensens rested their case, Beverly presented evidence that Albert lost consciousness prior to the collision as a result of sudden cardiac death. The Christensens opposed this theory. For a complete recitation of the evidence related to this issue, see our opinion in *Christensen v. Sherbeck, supra*. In this opinion, we recount only the evidence most pertinent to the Christensens' claims against BBPS.

The Christensens presented evidence that Chad, and some of the other students in the school van, were not wearing their seatbelts at the time of the collision. Barrett Gibbons, a sergeant with the Custer County sheriff's office testified that he was the first law enforcement officer at the scene of the accident on June 1, 2012. When Gibbons looked inside the school van, he observed one of the students, who was later identified as Chad, to be toward the front of the van, between the front bench seat and the driver and passenger's seats. Chad was unconscious and nonresponsive. Gibbons later learned that prior to the collision, Chad had been seated in the middle of the second bench seat in the back of the van. Chad's mother, Cathy, testified that when she arrived at the scene of the collision, she observed Chad to be inside of the van without his seatbelt on. Chad testified that he has no memory of the day of the accident.

Gibbons also testified that he assisted with removing two other injured students from the school van. He did not recall having to remove a seatbelt before extracting either of these students from the van. Austin Reynolds, another student who was riding in the van at the time of the collision, testified that he did not remember either Blum or Harvey telling him to put a seatbelt on before they departed Kearney to return to Broken Bow after the basketball clinic. In fact, Reynolds testified that he was fairly certain no one required him to wear a seatbelt in the school van because he was not wearing his seatbelt at the time of the collision. Reynolds testified that, ultimately, it was his decision not to wear his seatbelt on the day of the accident.

The Christensens also presented evidence concerning the employment status of Blum and Harvey at the time of the collision on June 1, 2012. Ryan Hogue testified that in June 2012, he was the assistant principal and activities director at Broken Bow Schools. As a part of his responsibilities, he was the primary supervisor for coaches of school sponsored teams. Hogue testified that both Blum and Harvey were teachers for BBPS, who had agreed to perform extra duties, including coaching the high school basketball team. While the teachers were paid in 12 monthly installments, their employment contracts for the 2011-12 school year indicated that BBPS employed Blum and Harvey from August 11, 2011, through May 25, 2012. Hogue explained that "[t]eachers have their summers off. . . . They're not employed, per se." As a result, by the day of the accident, June 1, Blum's and Harvey's contracts for the 2011-12 school year had expired. And, while each of them had signed a letter of intent to return for the 2012-13 school year, their new employment contracts had not taken effect by June 1, 2012. Neither Blum nor Harvey received any additional compensation for their participation in the summer basketball clinic on June 1.

However, Hogue testified that during the summer of 2012, both Blum and Harvey had access to the school, their classrooms, and the district's computer system.

The Christensens presented evidence that the basketball clinic attended by the students and coaches on the day of the accident was a school sponsored activity. The van driven to and from the clinic was owned by BBPS. In fact, Hogue specifically approved of and authorized Blum's use of the school van to take students to the basketball clinic in Kearney. The school paid for the gas utilized for the trip. Additionally, the students who attended the camp were wearing school issued jerseys. However, Hogue testified that participation in summer programs and clinics was considered completely voluntary for both students and coaches.

### 4. DIRECTED VERDICT

Immediately after the Christensens rested, BBPS moved for a directed verdict. In support of its motion, BBPS argued that the evidence presented at trial thus far affirmatively demonstrated that Blum and Harvey were not employees of BBPS at the time of the collision and that, as a result, the school did not have any control over Blum's or Harvey's actions. BBPS also argued that the Christensens failed to demonstrate that BBPS had acted negligently other than in failing to ensure that Chad wore his seatbelt in the van. BBPS asserted that such evidence, without more, was insufficient to demonstrate that BBPS was in any way liable for Chad's injuries. When asked by the district court, the Christensens conceded that their only evidence of negligence on behalf of BBPS was the failure to ensure that Chad was wearing his seatbelt in the school van.

In an oral pronouncement from the bench, the district court granted BBPS' motion for a directed verdict. The court stated as follows:

> [T]he undisputed facts in this case are that [BBPS'] van was [west]bound on Highway 2. . . . The Sherbeck vehicle was eastbound on Highway 2. The Sherbeck's vehicle suddenly and without warning entered the lane, the westbound lane, that the driver of the [BBPS'] van had no time to react to avoid the collision. [BBPS] is not bound to anticipate that a vehicle would suddenly move into their lane.
>
> So, although there is evidence that [BBPS] failed to ensure that the students were buckled, their -- the actions of Albert Sherbeck constituted an efficient intervening cause which broke the causal connection between [BBPS'] wrongdoing and the collision.

Subsequent to its oral pronouncement, the district court entered a written order memorializing its decision to grant BBPS' motion for a directed verdict. In that order, the district court further explained its reasoning:

> The court determines that reasonable minds cannot differ and can only conclude from the evidence that Mr. Sherbeck's vehicle suddenly and without warning crossed the center line and entered the lane of the vehicle owned by [BBPS]. A collision occurred and the driver of the [BBPS'] vehicle had no time to react to avoid the collision. This was the sole proximate cause of the collision and injuries to Chad Christensen.
>
> Therefore, even if [BBPS] was negligent in failing to ensure Chad Christensen was using a seat belt, Mr. Sherbeck's vehicle crossing the center line was not foreseeable and

constitutes an efficient intervening cause which broke the causal connection between [BBPS'] wrongdoing and the collision.

### 5. MOTION FOR NEW TRIAL

At the close of all the evidence, the jury returned a verdict against the Christensens and in favor of Beverly. Specifically, the jury found that while the Christensens had sufficiently proven their negligence claims, that Beverly had also sufficiently proven that Albert suffered a sudden loss of consciousness prior to the collision. The Christensens then filed a motion for new trial in both their case against Beverly and their case against BBPS. In the motion related to BBPS, the Christensens alleged that the district court's decision to enter a directed verdict in favor of BBPS "materially affected the substantial rights of the [Christensens], is not sustained by sufficient evidence and is contrary to law." Ultimately, the district court overruled the motion for new trial and this appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, the Christensens allege, consolidated and restated, that the district court erred in granting a directed verdict in favor of BBPS. The Christensens assert both that Albert's actions were not an efficient intervening cause and that BBPS did not raise the issue of efficient intervening cause in its motion for directed verdict.

On cross-appeal, BBPS alleges that the district court erred in denying its motion for summary judgment as to Chad's assumption of the risk and contributory negligence. BBPS also alleges that the district court erred in granting the Christensens summary judgment on these issues.

## IV. STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Lesiak v. Central Valley Ag Co-op*, 283 Neb. 103, 808 N.W.2d 67 (2012). In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Helmstadter v. North Am. Biological*, 5 Neb. App. 440, 559 N.W.2d 794 (1997).

## V. ANALYSIS

### 1. CHRISTENSENS' APPEAL

The Christensens assert that the district court erred when, at the close of their case, the district court directed a verdict in favor of BBPS after finding that the actions of Albert constituted an efficient intervening cause which broke the causal connection between the injuries suffered by Chad and any wrongdoing by BBPS in failing to ensure that Chad wore a seatbelt. Upon our review, we find that the Christensens' assigned error has merit. We conclude that the district court

erred in finding as a matter of law, prior to hearing any evidence presented by either the Sherbecks or by BBPS, that Albert's actions in crossing the centerline of traffic constituted an inefficient intervening cause.

Before we address the district court's decision to grant the motion for directed verdict as a result of its finding of an efficient intervening cause, we first address the Christensens' assertion that the court erred in granting the motion for directed verdict for reasons that were not even argued by BBPS. As we explained above, BBPS concentrated its argument in favor of a directed verdict on its contention that the Christensens had failed to demonstrate that Blum and Harvey were employees of BBPS at the time of the collision and that, as a result, the school had control over Blum's or Harvey's actions. The district court did not address this argument in granting a directed verdict. Instead, the court based its decision on its finding that Albert's actions in crossing the centerline of traffic constituted an efficient intervening cause which broke the causal connection between Chad's injuries and any failure by BBPS to ensure that he wore a seatbelt while riding in the school van.

In their brief on appeal, the Christensens assert that they "were not afforded the opportunity to argue or respond to an efficient intervening cause issue." Brief for appellant at 31. While we agree that the Christensens did not have the opportunity to specifically argue the efficient intervening cause issue prior to the district court's granting of the directed verdict, we cannot ignore the fact that they had the burden to present evidence as to each element of their cause of action prior to resting their case, including that BBPS' actions were the proximate cause of Chad's injuries. If the Christensens did not meet their burden as to one or more elements, the district court has a duty to enter judgment in accordance with the evidence. In *Schmid v. Clarke, Inc.*, 245 Neb. 856, 515 N.W.2d 665 (1994), the Nebraska Supreme Court explained that ordinarily, a motion for a directed verdict should state the specific grounds which are the basis for the motion. However, the court also explained, "[W]here proof relating to a specific issue is so clear and convincing that reasonable minds cannot reach different conclusions, it is the duty of the trial court to dismiss the jury and enter judgment in accordance with the evidence." *Id.* at 862, 515 N.W.2d at 669 (citing *Swink v. Smith*, 173 Neb. 423, 113 N.W.2d 515 (1962)). We do not find error in the district court's consideration of evidence presented as to an issue not raised in BBPS' motion for a directed verdict.

We next turn to the Christensens' assertion that the district court erred in granting the motion for directed verdict on the ground that Albert's actions were an efficient intervening cause. The Christensens assert that BBPS should be liable for failing to ensure that Chad wore a seatbelt, despite Albert's actions, because, "[t]he likelihood of having an accident is one of the hazards that made BBPS' conduct negligent." Brief for appellant at 34. They further assert that the collision was "sufficiently foreseeable." *Id*. Upon our review, we find the Christensens' assertion has merit.

In the Christensens' amended complaint, they alleged that BBPS and its employees were negligent in failing to ensure that the students riding in the school van were utilizing their seatbelts at the time of the collision. At the close of the Christensens' presentation of evidence, they conceded that their only evidence of negligence on behalf of BBPS was the failure to ensure that Chad was wearing his seatbelt in the school van.

To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Lewison v. Renner*, 298 Neb. 654, 905 N.W.2d 540 (2018). In this case, the district court found that Albert's actions in crossing the centerline of traffic constituted an efficient intervening cause which broke the causal connection between the injuries suffered by Chad and any breach in duty by BBPS in failing to ensure that Chad wore a seatbelt while riding in the school van.

An efficient intervening cause is a new, independent force intervening between the defendant's negligent act and the plaintiff's injury by the negligence of a third person who had full control of the situation, whose negligence the defendant could not anticipate or contemplate, and whose negligence resulted directly in the plaintiff's injury. *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). An efficient intervening cause must break the causal connection between the original wrong and the injury. *Id*. However, the doctrine that an intervening act cuts off a tort-feasor's liability comes into play only when the intervening cause is not foreseeable. See *id*. See, also, *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992). Foreseeability that affects proximate cause relates to the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff reasonably flowed from the defendant's alleged breach of duty. *Id*. In that regard, the Supreme Court has stated, "Clearly, a defendant cannot be relieved from liability for his negligence or her negligence by the fact that the very harm from which the defendant has failed to protect the plaintiff has occurred." *Sacco v. Carothers*, 253 Neb. at 15, 567 N.W.2d at 304.

In granting a directed verdict in favor of BBPS, the district court found, "[E]ven if [BBPS] was negligent in failing to ensure Chad Christensen was using a seat belt, [Albert]'s vehicle crossing the centerline was not foreseeable and constitutes an efficient intervening cause which broke the causal connection between [BBPS'] wrongdoing and the collision." As we explain below, we find that the district court took too narrow of an approach in determining whether the collision caused by Albert crossing the centerline was foreseeable by BBPS.

We pause briefly in our analysis to recount the evidence before the district court at the time that it granted a directed verdict in favor of BBPS. Because the court granted the directed verdict immediately after the close of the Christensens' presentation of evidence, it could only rely on that evidence when granting the directed verdict. The Christensens' evidence, as it related to the cause of the collision and to the cause of Chad's injuries, revealed that Albert suddenly crossed the center lane of traffic and struck the school van in a head-on collision. The evidence demonstrated that Harvey, the driver of the school van, had only seconds to react to the impending collision. It also revealed that Albert never engaged his brakes prior to the impact. It was clear from the evidence that Albert was not on his cellular telephone at the time of the collision. However, the Christensens provided some evidence to indicate that he may have been distracted or tired immediately prior to the collision. The Christensens presented evidence which indicated that Chad was not wearing a seatbelt after the impact of the collision and probably was not wearing a seatbelt at the time of the collision.

When we consider this evidence, we are compelled to find that the district court erred in finding, as a matter of law, that Albert's actions in crossing the centerline of traffic constituted an efficient intervening cause. We note that in our analysis of the district court's decision, we assume,

without deciding, that the Christensens sufficiently demonstrated that BBPS had a duty to ensure that Chad was wearing a seatbelt while riding in the school van.

In a broad sense, the purpose of any duty on the part of BBPS to ensure that students wear seatbelts in the school van is to protect the students as much as possible against any sort of traffic accident. Here, the evidence presented by the Christensens revealed that the school van was involved in a traffic accident when Albert crossed the centerline of traffic and collided with the school van. The school's potential for liability does not rest on the foreseeability of the exact circumstances of the collision present in this case: that an oncoming vehicle would have suddenly and without warning crossed the centerline of traffic and collided with the school van. Rather, the school's potential for liability rests on the foreseeability of any type of traffic accident occurring while the school van was transporting students. Because the collision between Albert's vehicle and the school van is the exact sort of harm that a seatbelt is meant to protect against, the collision cannot, as a matter of law, constitute an efficient intervening cause which insulates BBPS from liability for failing to ensure that Chad was wearing his seatbelt.

We conclude that the district court erred in granting a directed verdict in favor of BBPS at the close of the Christensens' case. Given the evidence presented thus far, we cannot say as a matter of law that Albert's actions constituted an efficient intervening cause. We remand the case back to the district court to consider BBPS' other arguments in favor of a directed verdict on their behalf. If the district court determines not to grant the directed verdict on those other grounds, it should proceed to continue with BBPS' presentation of evidence.

For the sake of completeness, we note that in their brief on appeal, the Christensens assert that the district court also erred in granting BBPS a directed verdict because the school district was clearly negligent in failing to require the students to wear seatbelts while riding in the school van. Given our reversal of the district court's decision to grant the directed verdict, we decline to address the Christensens' arguments in this regard. However, as we stated above, on remand, the district court should consider the propriety of granting a directed verdict on the other grounds raised by BBPS.

2. BBPS' CROSS-APPEAL

On cross-appeal, BBPS challenges the district court's decision to deny its motion for summary judgment as to Chad's assumption of the risk and contributory negligence. BBPS also alleges that the district court erred in granting the Christensens partial summary judgment on these issues. As a threshold matter, we must determine whether BBPS properly raised their cross-appeal. Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2014) provides:

Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

The Supreme Court has interpreted this rule to require the cross-appeal section of an appellate brief to set forth a separate title page, a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts. *Krejci v. Krejci*, 304 Neb. 302, 934 N.W.2d 179

(2019). BBPS' cross-appeal section fails to set forth a separate title page and a separate table of contents. Instead of including a separate title page, BBPS' appellee brief is separated from its brief on cross-appeal by a simple heading. In addition, instead of including a separate table of contents in its brief on cross-appeal, BBPS includes a table of contents for the cross-appeal within its table of contents for its appellees' brief. When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, as in this case, an appellate court has the discretion to decline to consider its merits. *Krejci v. Krejci, supra*. Here, we exercise our discretion not to consider BBPS' cross-appeal.

## VI. CONCLUSION

We reverse the decision of the district court granting a directed verdict in favor of BBPS. We remand the case back to the district court to consider BBPS' other arguments in favor of a directed verdict on their behalf. If the district court determines not to grant the directed verdict on those other grounds, it should proceed to continue with BBPS' presentation of evidence.

REVERSED AND REMANDED WITH DIRECTIONS.